## WYMAN v. NEWHOUSE.
### No. 90.

Circuit Court of Appeals, Second Circuit.
Dec. 6, 1937.

C. C. Daniels, of New York City (Lelia Russell, Carson & Petteway, of Miami, Fla., of counsel), for appellant.

Max D. Steuer, of New York City, for respondent.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

This appeal is from a judgment entered dismissing the complaint on motion before trial. The action is on a judgment entered by default in a Florida state court, a jury having assessed the damages. The recovery there was for money loaned, money advanced for appellee, and for seduction under promise of marriage.

Appellee's answer pleads facts supporting his claim that he was fraudulently enticed into the Florida jurisdiction, appellant's state of residence, for the sole purpose of service of process. A motion by the plaintiff-appellant to strike out this defense and for summary judgment, pursuant to rule 113 of the New York Rules of Civil Prac-

tice, was denied. For the purpose of such a motion, the facts alleged in the answer are deemed to be true. Rules 109, 112. Affidavits were submitted in support of and in opposition to these motions, and thereupon appellee moved to dismiss the complaint. The motion was granted.

Appellant and appellee were both married, but before this suit appellant's husband died. They had known each other for some years and had engaged in meretricious relations.

The affidavits submitted by the appellee deemed to be true for the purpose of testing the alleged error of dismissing the complaint established that he was a resident of New York and never lived in Florida. On October 25, 1935, while appellee was in Salt Lake City, Utah, he received a telegram from the appellant, which read: "Account illness home planning leaving. Please come on way back. Must see you." Upon appellee's return to New York he received a letter from appellant stating that her mother was dying in Ireland; that she was leaving the United States for good to go to her mother; that she could not go without seeing the appellee once more; and that she wanted to discuss her affairs with him before she left. Shortly after the receipt of this letter, they spoke to each other on the telephone, whereupon the appellant repeated, in a hysterical and distressed voice, the substance of her letter. Appellee promised to go to Florida in a week or ten days and agreed to notify her when he would arrive. This he did, but before leaving New York by plane he received a letter couched in endearing terms and expressing love and affection for him, as well as her delight at his coming. Before leaving New York, appellee telegraphed appellant, suggesting arrangements for their accommodations together while in Miami, Fla. She telegraphed him at a hotel in Washington, D. C., where he was to stop en route, advising him that the arrangements requested had been made. Appellee arrived at 6 o'clock in the morning at the Miami Airport and saw the appellant standing with her sister some 75 feet distant. He was met by a deputy sheriff who, upon identifying appellee, served him with process in a suit for $500,000. A photographer was present who attempted to take his picture. Thereupon a stranger introduced himself and offered to take appellee to his home, stating that he knew a lawyer who was acquainted with the appellant's attorney. The attorney whom appellee was advised to consult came to the stranger's home and seemed to know about the case. The attorney invited appellee to his office, and upon his arrival he found one of the lawyers for the appellant there. Appellee did not retain the Florida attorney to represent him. He returned to New York by plane that evening and consulted his New York counsel, who advised him to ignore the summons served in Florida. He did so, and judgment was entered by default. Within a few days after the service of process, the appellant came to New York and sought an interview with the appellee. It resulted in their meeting at the home of the appellee's attorney. She was accompanied by her Florida counsel.

These facts and reasonable deductions therefrom convincingly establish that the appellee was induced to enter the jurisdiction of the state of Florida by a fraud perpetrated upon him by the appellant in falsely representing her mother's illness, her intention to leave the United States, and her love and affection for him, when her sole purpose and apparent thought was to induce him to come within the Florida jurisdiction so as to serve him in an action for damages. Appellant does not deny making these representations. All her statements of great and undying love were disproved entirely by her appearance at the airport and participation in the happenings there. She never went to Ireland to see her mother, if indeed the latter was sick at all.

In asking for judgment based on these Florida proceedings, appellant relies upon article 4, section 1, of the United States Constitution, providing that "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State." Congress has provided that judicial proceedings duly authenticated, "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." 28 U.S.C.A. § 687. The first inquiry is what faith and credit would be given to this judgment within the state of Florida. On these facts, the service of process was fraudulent, and under the circumstances we think would have been vacated there. We are referred neither to any statutory provision of Florida, governing the vacation of service of process when affected by fraud, nor to any controlling Florida decision. We are, therefore, free

to apply the law of the forum where the service would have been set aside as fraudulent. Blandin v. Ostrander, 239 F. 700 (C.C.A.2); Neotex Mfg. Co. v. Eidinger, 250 App.Div. 504, 294 N.Y.S. 767 (1st Dept.); Skillman v. Toulson, 211 App.Div. 336, 207 N.Y.S. 296.

This judgment is attacked for fraud perpetrated upon the appellee which goes to the jurisdiction of the Florida court over his person. A judgment procured fraudulently, as here, lacks jurisdiction and is null and void. Lucy v Deas, 59 Fla. 552, 52 So. 515. Thompson v. Thompson, 226 U.S. 551, 33 S.Ct. 129, 57 L.Ed. 347. A fraud affecting the jurisdiction is equivalent to a lack of jurisdiction. Dunlap & Co. v. Cody, 31 Iowa 260, 7 Am.Rep. 129; Duringer v. Moschino, 93 Ind. 495, 498; Abercrombie v. Abercrombie, 64 Kan. 29, 67 P. 539. The appellee was not required to proceed against the judgment in Florida. His equitable defense in answer to a suit on the judgment is sufficient. A judgment recovered in a sister state, through the fraud of the party procuring the appearance of another, is not binding on the latter when an attempt is made to enforce such judgment in another state. Gray v. Richmond Bicycle Co., 167 N.Y. 348, 355, 60 N.E. 663, 82 Am.St.Rep. 720. There is a dictum to the contrary in Capwell v. Sipe, 51 F. 667, 668 (C.C.N.D.Ohio), where the defendant was sued in the foreign court while within the jurisdiction attending another case. His objection to service of process was overruled. There is authority to like effect in Vastine v. Bast, 41 Mo. 493. But we think the weight of authority is against such view. In Jaster v. Currie, 198 U.S. 144, 25 S.Ct. 614, 49 L.Ed. 988, to which appellant refers, the court decided only that the defendant had not been enticed into the jurisdiction by fraud and, therefore, that case is not helpful. Smith v. Apple, 6 F.2d 559 (C.C.A.8) and Cragin v. Lovell, 109 U.S. 194, 3 S.Ct. 132, 27 L.Ed. 903, deal with irregularities in procedure not voiding the judgment.

The appellee was not required to make out a defense on the merits to the suit in Florida. We are not here concerned with such rule, applicable to alleged fraud in the proceedings after valid jurisdiction of the person and the subject matter has been obtained. Here the court did not duly acquire jurisdiction and no such defense to the merits need be shown. An error made in entering judgment against a party over whom the court had no jurisdiction permits a consideration of the jurisdictional question collaterally. The complaint was properly dismissed.

Judgment affirmed.