**STRACHAN SHIPPING CO. v. ALEXANDER ECCLES & CO.** *

Circuit Court of Appeals, Fifth Circuit. April 12, 1928.

As Amended May 14, 1928.

No. 5218.

**1. Principal and agent ⬅️142—Defendant's signature as agent on freight contract and bill of lading would not of itself give notice of agency.**

Defendant's signature as agent on contract for shipment of cotton by water and on bill of lading did not of itself give notice of agency.

**2. Principal and agent ⬅️138—Agent need not disclose principal's name on face of contracts not under seal, where the other party has knowledge or notice of agency.**

It is unnecessary for agent to disclose principal's name on face of contracts not under seal, where the other party thereto has knowledge or notice of fact of agency.

**3. Evidence ⬅️459(2)—Intent of parties to freight contract and bill of lading, regarding whether defendant signed as agent, could be shown by extrinsic evidence.**

Intent of parties to contract for shipment of cotton by water and bill of lading, regarding whether defendant signed as agent for Shipping Board, could be shown by extrinsic evidence.

**4. Shipping ⬅️106(3)—Freight contracts were merged in bills of lading.**

Freight contracts, relating to shipment of cotton from port of Brunswick, Ga., to Manchester, England, were merely preliminary, and were merged in bills of lading.

**5. Shipping ⬅️39(4)—Bill of lading as between charterer and shipowner does not supersede charter party.**

A bill of lading as between charterer and shipowner does not supersede charter party.

**6. Principal and agent ⬅️190(3)—Evidence held to show shipper knew or had notice, that defendant, signing freight contract and bill of lading as agent, was agent for Shipping Board, and shipper could not recover from defendant for short delivery.**

In libel in personam for damages for short delivery in shipment of cotton from Brunswick, Ga., to Manchester, England, evidence *held*, to show that shipper knew or had knowledge of facts that put him on notice that defendant, signing, as agent, freight contract and bill of lading containing provision that bill of lading should be conclusive evidence against shipowner of quantity of cargo received as stated therein, was agent for Shipping Board, so that shipper could not recover from defendant for short delivery.

Appeal from the District Court of the United States for the Southern District of Georgia; William H. Barrett, Judge.

Libel by Alexander Eccles & Co. against the Strachan Shipping Company. From a decree for libelant (21 F.[2d] 656), defend-

*Rehearing denied May 25, 1928.

25 F.(2d)—23½

ant appeals. Reversed and remanded, with directions.

See, also, 21 F.(2d) 653.

Samuel B. Adams and A. Pratt Adams, both of Savannah, Ga., for appellant.

Anton P. Wright and Edward C. Brennan, both of Savannah, Ga. (Walter C. Hartridge, of Savannah, Ga., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. In a shipment of 4,000 bales of cotton from the port of Brunswick, Ga., to Manchester, England, there was a short delivery as to 28 bales. A libel in personam was brought against appellant, and by final decree it was held liable for the loss. This appeal is taken on the ground that appellant issued the freight contracts and bills of lading relied on for recovery, not as principal, but as agent for the owner of the carrying vessel.

Appellant was, as a matter of fact, acting as agent for the United States Shipping Board Emergency Fleet Corporation. It had never owned any vessels, nor chartered any from the Shipping Board. Prior to the entry of the United States into the World War, it had chartered privately owned vessels, but had made no charters during the years 1917, 1918, and 1919.

The shipment in question was made in 1919, and during that year appellee's agent, Hughes, knew that appellant was Shipping Board agent at Savannah and was operating the Shipping Board vessels from Brunswick. On May 26, by telegram and letter, appellant confirmed the booking of 2,000 bales of cotton to move from Brunswick to Manchester by Shipping Board steamer at $1.25 per cwt.; and on the next day similar confirmation was made of the booking of 2,000 additional bales at the same rate. One of the telegrams stated that arrangements could probably be made for a limited additional quantity of cotton. Freight contracts for 2,000 bales were included in each of the letters, and duly accepted. These contracts were on printed forms which appellant had been accustomed to use prior to 1917 when it acted as charterer. They bore the caption "Strachan Line;" provided for transportation by Shipping Board steamer or substitute, and did not permit the shipper to relet or transfer the freight room required except by the written consent of the Strachan Shipping Company; and were signed "Strachan Shipping Co., Agents." The bills of lading also bore the caption "Strachan Line," to which was added "Strachan Ship-

,ping Co., Agents," and provided for transportation "by the steamship Kisnop or other steamer of the line"; contained a clause as follows: "It is mutually agreed that, in the absence of fraud, clerical or obvious errors, this bill of lading, signed by the agents, shall be conclusive evidence against the shipowner of the quantity of cargo received as stated therein"; purported to be executed by "the agents of said ship"; and were signed "by authority of the owners, Strachan Shipping Co., Agents." The freight rate named in the contracts and the bills of lading was the same as that offered in the telegrams and letters, and was about one-fourth as much as the prevailing rates of private carriers.

In overruling exceptions to the libel, the district judge expressed the opinion that appellant had bound itself, because (1) it signed the contracts as agent without disclosing who its principal was; (2) the contracts were headed "Strachan Line," and reserved the right to use a substitute which need not be a Shipping Board steamer, but might as well be a steamer owned by appellant; and (3) the bills of lading contemplated the use either of the Shipping Board Steamer Kisnop or other steamer of appellant's line. 21 F. (2d) 653.

[1-5] It is an undisputed fact that appellant was acting as agent for the Shipping Board. The only question in the case is whether appellee, through its agent, Hughes, had knowledge or notice of that fact. It may be assumed that the freight contracts standing alone would bind appellant as principal. Its signature as agent would not of itself give notice of agency. Metcalf v. Williams, 104 U. S. 93, 26 L. Ed. 665. But it is unnecessary to disclose the principal's name on the face of contracts not under seal, where the other party thereto has knowledge or notice of the fact of agency. Metcalf v. Williams, supra. The intent of the parties may be shown by extrinsic evidence. Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050. The freight contracts were merely preliminary, and were merged in the bills of lading. The Caledonia (C. C.) 43 F. 681; s. c., 157 U. S. 124, 15 S. Ct. 537, 39 L. Ed. 644. We do not understand the case of Pendleton v. Benner Line, 246 U. S. 353, 38 S. Ct. 330, 62 L. Ed. 770, relied on by appellant, to announce a different rule. It was there decided that the charterer had the right to hold one of the joint

owners of a ship upon his warranty of seaworthiness. When the same case was before the Circuit Court of Appeals, it was stated that the charterer issued the bills of lading in its own name, and so the particular question of agency here involved did not arise in that case. A bill of lading, as between the charterer and the shipowner, does not supersede the charter party. The Iona (C. C. A.) 80 F. 933.

[6] Any uncertainty as to the intention of the parties arose from the circumstance that the contracts and bills of lading were issued on forms which were in use prior to the war when appellant acted sometimes for itself as charterer and sometimes as agent for shipowners; but we are of opinion that all doubt as to what was intended was removed by the letters and telegrams of appellant confirming its undertaking, and by the knowledge possessed by appellee's agent of the entire situation. The right reserved in the freight contracts was one which it was understood by the parties would not, and could not, be asserted. The bills of lading designated the particular Shipping Board steamer Kisnop. Appellee's agent must have known that no other vessel was being considered. It is clear that he had notice that appellant was issuing contracts and bills of lading on behalf of a ship of which it was agent. If appellant had been acting as owner or charterer, it would hardly have expressed a doubt in one of its telegrams as to its ability to arrange for an additional quantity of cotton. The undisputed evidence is that none other than a Shipping Board steamer would carry it at so low a freight rate as that named. In the body of the bills of lading it was provided that they should be signed by an agent, and should be conclusive evidence against the shipowner of the quantity of cargo received. They were actually signed by appellant as agent by authority of the owner. Aside from the documentary evidence, the only fair inference from the whole testimony is that Hughes knew, or had knowledge, of facts that put him upon notice that appellant was agent for the Shipping Board not only at Savannah but also at Brunswick. Our conclusion is that such knowledge and notice on his part precluded a recovery from appellant.

The decree is reversed, and the cause remanded, with directions to dismiss the libel.