**LAKE CITY STEVEDORES, INC.,**
Plaintiff-Appellee-Cross
Appellant,

v.

**EAST WEST SHIPPING AGENCIES,**
INC., Defendant-Appellant-Cross
Appellee.
No. 72–1366.

United States Court of Appeals,
Fifth Circuit.
March 5, 1973.

Brunswick G. Deutsch, New Orleans, La., Donald F. Mooney, New York City, for plaintiff-appellee-cross-appellant.

E. F. Barnett, Lake Charles, La., for defendant-appellant-cross-appellee.

Before RIVES, WISDOM and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

In this case a stevedoring company seeks to recover from a subagent of a ship-charterer the value of services rendered to the ship. The district court held that although the defendant acted as an agent for a disclosed principal it bound itself for fifty percent of the stevedoring charges. We reverse on this issue.

## I.

The plaintiff-appellee in this case, Lake City Stevedores, Inc. is engaged in the business of providing stevedoring services and acting as agent for ships in Lake Charles, Louisiana. The defendant-appellant, East West Shipping Agencies, Inc., is a New York Corporation in the business of furnishing various services to ship owners, operators, and others involved in the carriage of goods by sea. The present dispute arises from a contract negotiated by East West for its principal, Merchants Maritime Agency, Inc., for Lake City to provide services to the S.S. LA GRANDE ABETO while in the Port of Lake Charles between January 29, 1970, and February 4, 1970. Merchants Maritime, Inc. was, in turn, general agent for Phoenix Maritime Co., Ltd., the time-chartered owners of the vessel.

In November 1969 Merchants Maritime, as general agent for the vessel LA GRAND ABETO, appointed East West Shipping Agencies, Inc., as subagent for the United States East and Gulf Coast ports. On January 15, 1970, the operations vice-president of East West, A. F. Elia, called the general manager of Lake City, M. C. Hall, to ask whether Lake City would act as agent and stevedore for the ship while it docked in the Port of Lake Charles, and if so what its charges would be. The information requested by East West was provided by Lake City in a letter of the same day. Later conversations occurred and East West verbally appointed Lake City as agent and stevedores on January 20, 1970. Initially, Lake City requested a deposit of 60 percent of the estimated expenses, but after negotiations agreed to accept 50 percent. East West informed Merchants Maritime of that condition and was given permission to agree to that term. Merchants Maritime advised East West that, as was the usual procedure, a check for the estimated deposit would be forewarded immediately.

By letter of January 21, 1970, East West confirmed the verbal appointment of Lake City and agreed to send 50 percent of the stevedoring costs involved with the balance of funds to be paid upon receipt of all stevedoring invoices. Attached to that letter was a copy of the charter party which revealed that Merchants Maritime Agency, Inc., was the agent for Phoenix Maritime Co., Ltd., the time-chartered owners.

When the vessel arrived at Lake Charles on January 29, 1970, the stevedoring advance had not yet been paid,

Lake City provided services to the ship from January 29, 1970, to February 4, 1970. The stevedores loaded the ship with 4500 long tons of rice destined for DaNang, South Vietnam. During that period frequent calls were made between Lake City and East West concerning the overdue advance. Finally, the ship sailed without any payment having been made to Lake City. For security, Lake City refused to release the bills of lading until a guarantee of payment would be made. On March 11, 1970, East West quoted to Lake City a message which had been sent by Merchants Maritime the previous day. On March 10, 1970, Merchants Maritime had stated in a letter to East West: "This is to confirm that stevedore's expenses will be paid out of the captioned vessel's freight." In addition to forwarding the guarantee of Merchants Maritime, East West requested Lake City to: "Please confirm your agreement to the above in order to resolve the situation. . . ." That same day Lake City acknowledged receipt of the East West message which quoted the "telex received from Merchants Maritime Agency, Inc., relative payment guaranteed of total disbursements. . . ." Lake City immediately released the bills of lading to East West. East West then forwarded them to Merchants Maritime. Though presumably Merchants Maritime received payment for the freight, neither Lake City nor East West was paid.

The plaintiff commenced this suit on August 18, 1970, contending that East West had bound itself to pay the value of the services rendered to the ship which amounted to $38,801.73.[1] The district court concluded that East West was an agent for a disclosed principal and therefore was not bound as a principal for the full value of the services. Though East West was only an agent, the court concluded, it bound itself personally for 50 percent of the stevedoring charges by agreeing in its letter of January 21, 1970, to forward that amount to Lake City. The stevedoring charges were $34,458.41. Judgment therefore was rendered in favor of Lake City for $17,229.21.

## II.

■ At the outset we consider that portion of the district court's opinion holding that East West was not a principal to the contract, and we affirm that conclusion. The copy of the charter party, attached to the letter of January 21, 1970, clearly revealed in its first paragraph that Merchants Maritime was the general agent for the time-chartered owners. The charter party further stated in clause 17 that "loading expenses are for the vessel's account." Moreover, on January 29, the day the ship arrived in port, East West telexed Lake City requesting information as to the status of the ship. East West stated: "Owners pressing this info." This acknowledgement by East West, before the commencement of work by Lake City clearly informed Lake City that East West was acting for another. Though Lake City disputes that it was aware of the agency relationship at that time, it is uncontested that it was aware of the agency relationship before it released its ultimate security, the bills of lading. The district court concluded that Lake City actually became aware of the agency relationship as early as during the loading process before Lake City had completed performance. For these reasons we conclude that the district court correctly decided that both parties were aware that East West was an agent acting within the scope of its authority. Thus, East West was not a principal to the contract.

## III.

Though the district court held that East West was not a principal, it held that East West had become personally responsible for 50 percent of the stevedoring charges and that this responsibil-

---

1. Lake City is proceeding against Merchants Maritime but in another jurisdiction (S.D.N.Y. 70 Civ. 5346).

ity arose from East West's letter of January 21, 1970, in which it was stated: "As arranged we will forward a check for approximately 50% of the stevedoring costs involved and balance of funds will be paid upon receipt of agency proforma and all invoices on stevedoring."

One who acts in the capacity of an agent for a disclosed principal is not liable for claims arising out of a contract executed by the agent on behalf of his principal. Strachan Shipping Co. v. Alexander Eccles & Co., 5 Cir. 1928, 25 F.2d 361; Valkenburg, K.-G. v. The S.S. Henry Denny, 7 Cir. 1961, 295 F.2d 330; E.I. Dupont de Nemours & Co. v. Barge Carriers, 1944, D.Fla., 55 F.Supp. 728; Restatement of Agency 2d, §§ 320, 328 (1958); 2 Williston On Contracts, § 288 (1959). An agent may however bind himself if he conducts himself in such a way as to indicate an intent to be bound. Whitney v. Wyman, 1880, 101 U.S. 392, 25 L.Ed. 1050; Castor v. Coppock, 8 Cir. 1954, 211 F.2d 136; See United States Shipping Board Merchant Fleet Corp. v. Harwood, 1929, 281 U.S. 519, 50 S.Ct. 372, 74 L.Ed. 1011. In the absence of an unambiguous contract, all relevant extrinsic evidence may be considered in determining whether an agent has sufficiently indicated an intent to become personally bound. Strachan Shipping Co. v. Alexander Eccles & Co., 5 Cir. 1928, 25 F.2d 361; Restatement of Agency 2d, § 323 (1958). Here, weighing all verbal and written communication, we conclude that East West did not express an intent to be personally bound for payment of 50 percent of the stevedoring charges.

The letter by East West of January 21 did not unequivocally state that East West intended to be bound personally; rather, its words "as arranged" referred to discussions in prior telephone conversations. The testimony is in conflict as to what point in time East West explicitly stated that it would await receipt of funds from Merchants Maritime before forwarding payment to Lake City. Mr. Allen Elia of East West testified that he told Lake City early in their negotiations that he was awaiting an advance from Merchants Maritime. He further testified that at the time of loading, when Lake City inquired why the advance had not been forwarded, he informed Lake City that he had not yet received the advance from Merchants Maritime. In conflict with this is the testimony of Mr. Monty Hall of Lake City who testified that he was not aware of the agency relationship until after he had fully performed. Still, Lake City does not dispute that it received a copy of the charter party prior to performance. This put Lake City on notice of the agency relationship and created an inference that East West would not be responsible as a principal unless clearly expressing such an intention. Restatement of Agency 2d, § 320 (1958); W. Seavey, The Law of Agency § 70(d), at 120 (1964). "The intent developed is alone material, and when that is ascertained it is conclusive. Where the principal is disclosed, and the agent is known to be acting as such, the latter can not be made personally liable unless he agreed to be so." Whitney v. Wyman, 1880, 101 U.S. 392, at 396, 25 L. Ed. 1050, at 1052. United States Shipping Board Merchant Fleet Corp. v. Harwood, 1929, 281 U.S. 519, 50 S.Ct. 372 65, 74 L.Ed. 1011;[2] Marcus Loew Booking Agency v. Princess Pat. Limited, 7 Cir. 1944, 141 F.2d 152; Walford v. McNeill, 1939, 69 App.D.C. 247, 100 F.2d 112; American Guild of Musical Artists v. Atlanta Municipal Theater Inc., 1971, N.D.Ga., 322 F.Supp. 1154;

---

2. Even when a party signs his own name to a contract with a notation "agent", if he has been in the habit of expressing, in that way, his representative capacity in dealing with a third party, it would be presumed that the intent of the parties was not to bind the agent personally. Metcalf v. Williams, 104 U.S. 93, 26 L.Ed. 665.

Mid-Continent Tel. Corp. v. Home Tel. Co., 1970, N.D.Miss., 319 F.Supp. 1176.

Furthermore, there was no valid business reason for East West to bind itself. It had nothing to gain and everything to lose by doing so. Lake City never directly requested a personal guarantee and none was ever offered. East West had been appointed as Gulf Coast agent only two months prior to the appointment of Lake City. East West was itself unfamiliar with the reliability and stability of Merchants Maritime.

The record contains no clear expression of intention by East West to accept personal responsibility. On the contrary, the defendant resisted any implication of that intention and protected its position as a mere conduit of funds. In March 1970, when payment was long overdue, Lake City requested a guarantee of payment before releasing the bills of lading. Without offering any guarantee of their own, East West forwarded the verbatim guarantee of Merchants Maritime, which Lake City accepted.

The earlier agreement of East West for the mere transmission of partial payment through itself as an agent is not, without more, sufficent to indicate an intention to be personally bound. Nor is it sufficient that Lake City, a subsubagent, might ordinarily have relied upon a subagent, such as East West, to collect and forward funds due for services rendered to the principal. That an agent acts as surrogate or substitute for a disclosed principal does not per se bind the agent, because it is the essence of agency that an agent act as a principal but not be bound as one.

For these reasons we conclude that East West did not demonstrate an intention to be bound for 50 percent of the stevedoring charges.

## IV.

Because we have concluded that the plaintiff is not entitled to recover from the defendant, the issue of judicial interest is moot.

The judgment of the trial court is affirmed in part and reversed in part. The case is remanded for further proceedings not inconsistent with this opinion.